73

The Old Second National Bank of Aurora, Appellant,
    v. Ben T. Wright, Also Known as B. Wright, Ap-
    pellee.

Gen. No. 8,894.

Heard in this court at the
February term, 1935.                                    Opinion
filed May 1, 1935.

SHEARER, O'MALLEY & SEARS, of Aurora, for appellant; FRED B. SHEARER and BARNABAS F. SEARS, of counsel.

LORD & PARKER, of Aurora, for appellee; MAURICE F. LORD and GILBERT L. WOOD, of Aurora, of counsel.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This cause grows out of the taking of judgment by confession by appellant against appellee upon three notes, in the circuit court of Kane county. The total amount of the judgments taken was the sum of $1,219.77. Upon motion of appellee, the judgments were opened up and appellee given leave to plead. The three cases were consolidated. Upon a trial of the cause by jury, the issues were found for the defendant below, appellee herein. Judgment was entered on the verdict. Appellant prosecutes this appeal from such judgment.

Prior to the month of July, 1930, a corporation was engaged as a dealer in Ford automobiles in the city of Aurora, which company bore the corporate name of the Cunningham Motor Company. This company had become financially involved. The president thereof was removed, the corporate name changed to the Thomas Motor Company, and Mr. C. C. Thomas placed in charge of the business. Prior thereto, a conference was had between appellant and appellee and arrangements were made whereby appellant was to furnish money to the Thomas Motor Company to buy new Ford cars in order to carry on its business. The arrangements reached were that appellee would sign a note individually, with the Thomas Motor Company, for the cost price of each new Ford motor car that appellant advanced the money to pay for. It appears that the bank in addition to taking notes of appellee

and the motor company, as aforesaid, also took trust receipts and bills of sale. Appellee in referring to this plan states that the bank agreed to furnish money for the purchase of new cars and that they would be handled on the same basis as a finance company, being on what is generally known as a floor plan. Appellee conducted an agency for the retail of Ford automobiles in the city of Chicago. He agreed with appellant that he would take over such automobiles as the Thomas Motor Company was unable to sell and upon which appellant had advanced the purchase price pursuant to the agreement reached between them.

A short written agreement was entered into between appellant and appellee pursuant to their above conference, which appellee urges should be considered as a contemporaneous agreement, with each of the three notes involved herein. This agreement is in the words and figures as follows:

"THIS AGREEMENT made and entered into this 18th day of July, A. D. 1930, by and between THE OLD SECOND NATIONAL BANK OF AURORA, Aurora, Illinois, party of the First Part and Ben T. Wright of Chicago, Illinois, Party of the Second Part, WITNESSETH:

"WHEREAS said Party of the Second Part is financially interested in the Thomas Motor Company of Aurora, Illinois and whereas said Party of the Second Part and the Thomas Motor Company have requested the said Party of the First Part to advance certain moneys from time to time on Ford cars and whereas in order to carry out said plan it is agreed between the parties that the said Thomas Motor Company shall from time to time, as shipments of Ford cars were received, make a bill of sale to said Party of the First Part and execute a trust receipt for the same and the money advanced upon said cars shall at no time exceed the actual cost of each car. The payment of the money

for such cars shall be evidenced by a note executed by the Thomas Motor Company and Ben T. Wright.

"AND IN CONSIDERATION THEREOF it is understood and agreed that if at any time the Thomas Motor Company is unable to sell and dispose of said cars and redeem them from the bill of sale executed, then and in that event the party of the second part agrees to take the said cars off of the hands of the party of the first part, and reimburse said Party of the First Part such sum or sums of money they have advanced.

"This is executed in consideration of the sum of one Dollar ($1.00), each to the other in hand paid.

"IN WITNESS WHEREOF the parties have hereunto set their hands and seals the day and year first above written.

"(Signed)  B. Wright
(Signed)  The  Old  Second
National  Bank  of
Aurora
by
William George, Prest."

Pursuant to the arrangements between appellant and appellee, appellant proceeded to advance money to pay for new Ford automobiles purchased and received by the Thomas Motor Company. This company became financially involved and on November 14, 1930, delivered to appellant storage tickets for 12 new Ford cars which it had stored in the Elks garage in the city of Aurora. Appellant at this time held appellee's notes for 15 cars for which it had advanced the purchase money. Twelve of these notes were for the cars stored as aforesaid. Appellee paid to appellant the total amount due upon the 12 notes represented by the 12 stored cars. It developed that the Thomas Motor Company had sold the other three cars and had not accounted to appellant for the purchase price thereof, which appellant had advanced, and which was evi-

denced by the three notes now involved in this proceeding.

The Thomas Motor Company was adjudicated a bankrupt on December 8, 1930. Subsequently, appellant took judgment against appellee upon the three notes represented by the three Ford cars which were sold by the Thomas Motor Company and the proceeds thereof unaccounted for. Appellee filed the general issue and it was stipulated that any matter of defense might be set up thereunder, the same as if it had been specially pleaded. Appellee states that he relied upon three defenses, and urges the same upon this appeal. They are as follows:

"(1) The written contract did not state, expressly or impliedly, a liability upon appellee in the event present in this case, namely, in the event that Thomas Motor Company was able to sell and dispose of the cars, but unable to redeem them from the bill of sale; (2) Appellant at the time it demanded appellee to take the three cars in question off its hands did not in fact have the cars to be taken off its hands, and hence was not entitled to reimbursement under the contract; and (3) Appellee upon reimbursement was entitled to have the security made available to appellee, and if not available through appellant's laches or negligence, then the loss entailed by such laches or negligence should fall on appellant."

When there is a contemporaneous written contract affecting the terms of a note, it is to be construed together with the note in so far as each may be given effect, and there is no repugnancy between them. Any lawful condition annexed to a note by a collateral written agreement may be recognized and enforced as between the original parties.

From an examination of the evidence in this case including the above agreement between appellee and appellant, it is obvious that it was the desire of appel-

lee to borrow money on behalf of the Thomas Motor Company, upon his own financial responsibility. It is not in dispute that all parties knew the Cunningham Motor Company was financially involved and unable to longer secure new cars to sell. It appears that the corporate name of this company was changed to that of the Thomas Motor Company, Mr. Thomas placed in charge thereof, and that appellee made arrangements whereby the purchasing of new cars could be financed through appellant, in order that the business of the Thomas Motor Company might be carried on. The above instrument states that appellee was financially interested in the Thomas Motor Company. Prior to the date of this agreement and on May 31, 1930, appellee addressed a letter to appellant in which he stated: ''Enclosed you will find copy of letter written to Mr. Cunningham and also letter of authority given to Mr. Thomas, both of which are self-explanatory.''

It is apparent that the Thomas Motor Company had come to the end of its business existence on November 14, 1930, when it stored the 12 Ford cars in the Elks garage and delivered the receipt therefor to appellant. Only one question is involved in this proceeding and that is as between appellant and appellee, who must stand the loss for the three cars sold by the Thomas Motor Company. The three notes held by appellant therefor were direct obligations signed by appellee. The general rule in construing a contract of this nature is that it shall be proper to take into consideration the surrounding circumstances in order that the intent of the parties may be arrived at. The object of the construction is to ascertain the intention of the parties as manifested by the language of the contract. Appellant was not engaged in the automobile business, but in the business of loaning money. Appellee's mission to the bank of appellant was for the express purpose of borrowing money. We are not

inclined to the view that it was the intent of the parties, or the purpose of the agreement, to limit the liability of appellee upon his notes. Neither are we of the opinion from the wording of said contract, that such an interpretation or construction can be placed thereon. In order to give rise to such a construction, the terms of the agreement should plainly disclose that the contracting parties so intended to limit the liability of appellee, and definitely set out the manner in which his liability was to be limited. The notes in question were the ordinary form of judgment notes, and complete instruments within themselves. Any agreement between the parties limiting or fixing the liability of the appellee differently than expressed in the notes, must clearly appear.

Appellee urges that the appellant was guilty of such negligence and bad faith in not keeping itself advised as to the sale of Ford cars by the Thomas Motor Company, and in permitting it to sell and dispose of the three cars in question, without accounting for the proceeds thereof, as to constitute a legal defense in favor of appellee to the notes in question. Appellee claims that the loss of the security upon the three notes resulted from the negligence of appellant in permitting the motor company to sell the three cars without properly accounting therefor, and that appellee was thereby released from his obligation upon the notes because of such negligence of appellant. Appellee knew and understood at all times that it was not only the purpose and intent of the Thomas Motor Company to sell all of the cars which it received, but that this was the sole aim and purpose. The cars were purchased by the motor company for the express purpose of resale. Appellee understood this and he profited from the sale of such cars, as he was financially interested in the said motor company. There is nothing in the evidence tending to show that appellant had any

knowledge or in any way consented to the sale of these three cars by the Thomas Motor Company. We do not find that the evidence in this case establishes such negligent conduct on the part of appellant as claimed by appellee.

The notes in question were direct obligations of appellee. They were given for the purpose of evidencing money loaned by appellant at the instance of appellee and for which appellee executed his notes. We are not of the opinion that the agreement by its terms releases appellee from his liability upon the notes in question because of the wrongdoing of the Thomas Motor Company. Neither do we believe that it was the intent or purpose of the parties as evidenced by said agreement or by the facts and circumstances surrounding the execution thereof, that the appellee should be released and discharged from his liability upon his notes because of any wrongdoing of the Thomas Motor Company, upon whose behalf he was acting and in which company he was an interested party. We find nothing in the written agreement which we believe was intended to in any way limit the liability of appellee upon his notes.

The judgment of the circuit court of Kane county is reversed and this cause is remanded with directions that the judgments as heretofore entered by said court in the three cases consolidated, bearing general numbers 53,244, 53,245, and 53,246, shall stand in full force and effect as of the date of the original entry thereof, and that appellant shall have execution thereon.

*Reversed and remanded with directions.*